Green, J.,
delivered the opinion of the court.
The plaintiff in error has been indicted and convicted in the circuit court of Franklin county, for the murder of Elihu Burk, her husband. She moved for a new trial, which was refused, to which she excepted, and appealed to this court.
It is now insisted on behalf of the prisoner, that the evidence is not sufficient to warrant the verdict pronounced in this cause, and for that reason a new trial ought to be granted.
*301 The evidence is altogether circumstantial, but the facts are few and significant.
It appears that the deceased was a revolutionary soldier, and at the time of his death was more than one hundred years old.
The prisoner had been his wife about sixteen years, and is about fifty years of age. For some years before the murder, the parties have not lived in harmony, and the prisoner was much from home, sometimes absenting herself for several days at a time,
The old man, sometime before his death, complained that she neglected him — accused her of taking his valuable papers, and of having tried to poison him — and said he had been compelled to get Dave Bradford to come and take care of him. She denied all these accusations, and said, if Bradford stayed there, she would not, and bundled up her clothes and left. Bradford remained about a month, but the deceased had, before he left, made him a deed to his land. Bradford was the husband of a woman who had been brought up by the deceased, he having no children.
The deceased was a pensioner for services in the revolutionary war; and the prisoner said, if he was dead she would receive the pension. At the time of the murder, the prisoner and deceased lived alone, on Cumberland Mountain. On a Saturday evening after night, the prisoner went to Dick Bradford’s, a mile and one half from her residence, and told that her husband was dead. She said when she went home that evening, he was in bed, and she shook him, and spoke to him several times, and she supposed he was dead. She did not seem concerned or affected in any way by the event. Upon this information several of the neighbors went to the house, and found the old man in his bed, with shirt, pants, shoes and socks on. His shirt was clean, was tied at the collar with a *302 thread, and the collar of the shirt was turned down. The head was tied up with a handkerchief.
When the handkerchief was removed from the head, it was found to have two wounds in the forehead, as if made with a hatchet, near each other. The skull was fractured. When his clothes were removed, the body was found to be badly blistered, as if burned with scalding water. The witness thinks the scalds would have been sufficient to produce death. There was no blood on the bed or the floor, and none on the clothes of the deceased. The floor had been newly scoured, and was clean. On raising the planks of the floor there was, underneath the signs of blood, and much appearance of soapsuds.
One of the persons present asked the prisoner if she had done that. She replied, by asking if they thought she would murder him after living with him eighteen years. To this it was replied, that it looked suspicious, and she made no further reply. The prisoner’s language and conduct were light and vulgar, after the murder, and while she was in custody, ft was known to one of the persons present, that there was a hatchet at the house, he having seen it sticking in a log some time before, and he asked the prisoner where it was. She said she did not know, that she had not seen it for three weeks. The witness then said, if she did not get it, he would. She then put her hand under a box and pulled it out, saying, here it is, and handed it to him. It was dark and she could not have seen the hatchet at the place where she got it. There was no blood on it.
These are the principal facts, and we think they are inconsistent with the innocence of the prisoner.
The murder at his own house in open day, and a deliberate cleansing the floor, are facts inconsistent with the supposition of her innocence. No one else would have been concerned to remove the traces of blood. Nor would any. one else have *303 ventured, in open day, to take time to obliterate it. The deceased had been washed and dressed after the murder. Iiis shirt was clean and his head tied up so as to conceal the wounds. The collar of his shirt was carefully fastened with a thread and turned down. Who else than the prisoner knew where to get his clean clothes, and who would have taken the time to effect all this? If another were the murderer, he would have been every moment apprehensive of the return of the prisoner home, and of his own detection. Besides it is not perceived that any one else could have had a motive to clean up the blood, and wash and dress the body.
Who but the prisoner would have taken time to heat water to scald the deceased; and who but a woman would have thought of such a manner of torture? Who but a woman would have taken the pains to tie the collar of the shirt with a thread, and carefully turn it down.
Add to this, the hatchet, the very instrument with which it seems, the murder might have been done. At first she denied she had seen it in three weeks, and then she reached and took it from a dark place; proving she had known all along where it was. Add to all this, her utter heartlessness, and levity after the murder, and her motives, in the ill terms on which they lived, her hatred of Bradford, to whom he had given his property, and her expectation that she would get his pension after his death, and the proof her guilt is conclusive.
Doubtless she hoped, the neighbors would feel no surprise that one so aged was dead, and when they should come, seeing him clean and dressed, and no signs of violence, they would inter the body without undressing it.
Affirm the judgment.